# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MICHELLE D.J., | ) | NO. ED CV 18-2076-E |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| NANCY A. BERRYHILL, DEPUTY | ) | |
| COMMISSIONER FOR OPERATIONS, | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## PROCEEDINGS

Plaintiff filed a complaint on September 27, 2018, seeking review of the Commissioner's denial of benefits. The parties consented to proceed before a United States Magistrate Judge on November 5, 2018. Plaintiff filed a motion for summary judgment on March 5, 2019. Defendant filed a motion for summary judgment on April 3, 2019. The Court has taken the motions under submission without oral argument. See L.R. 7-15; "Order," filed October 2, 2018.

///

///

**BACKGROUND**

Plaintiff, a former customer service representative, asserts disability since November 1, 2012 – the day she was terminated from her job – based on alleged degenerative disc disease, sciatica, "RLS" (restless leg syndrome), a cyst on her left wrist and high blood pressure (Administrative Record ("A.R.") 58, 169-81, 213-14).

An Administrative Law Judge ("ALJ") reviewed the record and heard testimony from Plaintiff and a vocational expert (A.R. 19-478). The ALJ found that Plaintiff had severe degenerative disc disease of the lumbar spine, obesity, a history of left wrist ganglion cyst status post removal, a history of restless leg syndrome and bilateral knee arthritis (A.R. 22). The ALJ also found, however, that Plaintiff retains the residual functional capacity to perform certain light work,[1] including Plaintiff's past relevant work as actually and generally performed (A.R. 23-26; <u>see also</u> A.R. 58-62 (vocational expert's testimony, which the ALJ adopted)). The Appeals Council denied review (A.R. 1-3).

///
///
///
///

_____

[1]    Specifically, the ALJ found Plaintiff retains a capacity for light work limited to occasional postural activities, no climbing of ladders, ropes or scaffolds, no work around unprotected heights or dangerous machinery, and frequent but not constant use of the left hand for fine and gross manipulation (A.R. 23).

# STANDARD OF REVIEW

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see also Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

> If the evidence can support either outcome, the court may
> not substitute its judgment for that of the ALJ. But the
> Commissioner's decision cannot be affirmed simply by
> isolating a specific quantum of supporting evidence.
> Rather, a court must consider the record as a whole,
> weighing both evidence that supports and evidence that
> detracts from the [administrative] conclusion.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and quotations omitted).

///
///
///
///

**DISCUSSION**

After consideration of the record as a whole, Defendant's motion is granted and Plaintiff's motion is denied.  The Administration's findings are supported by substantial evidence and are free from material[2] legal error.  Plaintiff's contrary arguments are unavailing.

## I.    Summary of the Medical Record

Plaintiff asserts disability since November 1, 2012, when she was terminated from her job as a customer service representative (A.R. 37, 58).  Plaintiff testified that she applied for regular work after she was terminated but was unable to obtain a job (A.R. 37).  Beginning sometime in 2015, Plaintiff has been doing "domestic work," taking care of her boyfriend at home through IHSS (a state program) in return for approximately $300 per month (A.R. 36-38, 199).

Plaintiff testified that she no longer can work because of her back condition which has caused pain to radiate down her left leg since April, 2014, when she fell and injured her ankle, back and wrist (A.R. 38-39).  Plaintiff said she initially had no health insurance and went to doctors at Harbor UCLA for her medical needs before she was placed on Medi-Cal (A.R. 39).  There are no Harbor UCLA medical documents in the Administrative Record.  As detailed below, the

---

[2]    The harmless error rule applies to the review of administrative decisions regarding disability.  See Garcia v. Commissioner, 768 F.3d 925, 932-33 (9th Cir. 2014); McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011).

available treatment records consist mostly of primary care treatment notes from Drs. Abdul Masoud and Muhammed Memon with the Sunshine Medical Clinic, and treatment notes from neurologist Dr. Salvatore Danna and later providers, all of which post-date Plaintiff's 2014 fall (A.R. 339-60, 376-84, 431-61).

### A. Treatment Records from Sunshine Medical Clinic

The earliest medical records are x-ray reports from an April 9, 2014 visit to the Lakewood Regional Medical Center Emergency Room after Plaintiff's reported fall (A.R. 327-34). A right ankle x-ray reportedly showed soft tissue swelling and a three millimeter osseous sliver dorsal to the navicular (A.R. 327-28). X-rays of the hip and pelvis showed no radiographically evident fracture or dislocation (A.R. 329-30).

Plaintiff followed up with Dr. Masoud who, along with Dr. Memon, treated Plaintiff from April of 2014 through at least February of 2017 (A.R. 339-60, 376-84). On April 23, 2014, Plaintiff reported that she had fallen and had gone to the emergency room for x-rays, and she was complaining of right ankle pain, foot pain and a history of hypertension (A.R. 358). She weighed 270 pounds, with a reported body mass index of 42.28 (id.). On examination, she reportedly had no abnormal findings apart from wearing a brace on her right foot which was tender over the heel medially, tenderness in the lumbar spine, and a ganglion cyst over the left wrist (id.). Her pulse rates were normal, she was sensorily intact, she had no edema, and she had a normal range of motion in all joints (id.). She was assessed with

hypertension, contusion and morbid obesity, prescribed medication for
the hypertension, and referred to an orthopedic surgeon to look into
the possibility of an avulsion fracture to her right foot (A.R. 358-
59).

On May 19, 2014, Plaintiff presented, complaining of right ankle
pain, back pain for three months with increasing intensity, and asking
for a referral to have her ganglion cyst removed (A.R. 356). On
examination, Plaintiff was wearing a left wrist brace and a right
ankle brace, and she reportedly had mild tenderness in the lumbar
spine (id.). She was assessed with back pain and prescribed Ultram
and Robaxin (A.R. 356-57).

On June 26, 2014, Plaintiff presented, complaining of bilateral
knee pain on and off for years and left hand pain from her fall (A.R.
354). On examination, she reportedly had crepitus and deformity in
her knees and a tender left "MT" head (A.R. 354). She was assessed
with arthritis and referred to an orthopedist and for weight loss
measures and diagnostic imaging (A.R. 355).[3]

///

///

---

[3]    A June, 2014 x-ray of the lumbar spine showed
degenerative changes with disc disease and facet hypertrophy, and
minimal anterolisthesis of L4 over L5 with some question on
extension (A.R. 449). Bilateral knee x-rays showed mild
narrowing of the medial compartment on the left and right side,
and some calcification of the insertion of the patellar tendon
and quadriceps tendon to the patella on the right side (A.R.
448). A left hand x-ray showed questionable minimal narrowing of
the interphalangeal joints with no acute fracture or dislocation
(A.R. 447).

On August 4, 2014, Plaintiff presented for an EKG and blood test before her ganglion cyst removal, and she asked for a neurologist and an orthopedist referral for her back and knee pain (A.R. 351). On examination, Plaintiff reportedly had crepitus and deformity in her knees and moderate tenderness in the lumbar spine (A.R. 351-52). She was assessed with lumbar radiculopathy and ganglion of the tendon sheath, and she was referred as requested (A.R. 352). Plaintiff underwent surgery to remove the left wrist ganglion cyst on August 8, 2014 (A.R. 291-92, 309).

On November 4, 2014, Plaintiff presented, complaining of allergies and of having "charlie horses" in the morning when she wakes up (A.R. 349). Examination reportedly was normal (id.). She was assessed with allergic rhinitis and prescribed Singulair (A.R. 349-50).

On December 23, 2014, Plaintiff presented, asking for a referral to a surgeon to remove the cyst on her left wrist, which had recurred (A.R. 347). She was assessed with sleep related leg cramps and prescribed medication (A.R. 347-48). On January 8, 2015, Plaintiff consulted a surgeon to remove her left wrist ganglion cyst (A.R. 289-90).

On February 9, 2015, Plaintiff presented, complaining of left index finger pain for the past few months (A.R. 345). On examination, there was some mild tenderness (id.). She was assessed with bradycardia and referred for hand imaging and lab work (A.R. 346). On April 1, 2015, Plaintiff presented, complaining of left knee pain and

pain over the patellar region with extension (A.R. 343). She was prescribed Mobic (id.). On May 21, 2015, Plaintiff presented for a preoperative visit for her left wrist ganglion cyst surgery (A.R. 383-84).[4] Although Plaintiff reportedly had undergone her second left wrist surgery by the time of the administrative hearing (see A.R. 44-45), there are no treatment notes in the Administrative Record regarding Plaintiff's second left wrist surgery.

On August 20, 2015, Plaintiff presented for results of a left knee MRI (A.R. 381-82).[5] On examination, she reportedly had moderate swelling and tenderness in her left knee, but walked independently (id.). She was assessed with knee pain and referred to an orthopedist for a lateral meniscal tear (A.R. 382). The record contains no notes for any orthopedic consult regarding Plaintiff's knee. The next note is from June 29, 2016, when Plaintiff returned to refill her medications, at which time she reportedly had crepitus in both knees but no effusion (A.R. 378-79).

On February 14, 2017, Plaintiff returned, requesting referral to a different neurologist for managing sciatica and pain because Dr.

---

[4]     Plaintiff had presented to a cardiologist for a cardiac clearance for surgery on May 5, 2015 (A.R. 427-29). Plaintiff reportedly was a current smoker who drinks alcohol on a social basis only and had experimented with marijuana (A.R. 427). Plaintiff was assessed with precordial chest pain and smoking and was cleared for surgery (A.R. 428-29).

[5]     A July, 2015 MRI of the left knee showed tricompartmental osteoarthritis, shallow trochlear groove, medial and lateral compartment chondromalacia, anterior horn lateral meniscus tear, grade 2 MCL sprain and suprapatellar space effusion and Baker's cyst (A.R. 406-07).

Danna was retiring (A.R. 376-77). She also sought authorization for a right knee injection (id.). Plaintiff was assessed with arthropathy and dorsalgia, given authorization for a right knee injection and referred to a new neurologist (id.).[6]

## B. Treatment Records from Neurologist Dr. Salvatore Danna

On August 26, 2014, Plaintiff had consulted with Dr. Danna, who had diagnosed lumbar disc disease with nerve root compression and sciatica (A.R. 431). Examination reportedly had shown decreased range of motion and spasms in the calves and intrinsic foot muscle groups, tenderness in the sciatic notch bilaterally, and nerve root compression as evidenced by the absence of reflexes at the ankle (id.). Dr. Danna recommended an EMG study of the lower extremities, Norco, Robaxin, Mobic and Neurontin for Plaintiff's pain and radiculopathy, and a possible injection at the L5 facet joint if Plaintiff's pain did not resolve with medication (id.).

On October 10, 2014, Plaintiff was given an injection in her L5 facet with reported "excellent results" (A.R. 445). She apparently was responding favorably to "conservative" measures, including nerve root compression and facet blocks (id.). On December 3, 2014, Plaintiff presented for another L5 facet injection, with excellent results reported (A.R. 444).

///

///

---

[6] There are no treatment notes from Dr. Friedburg in the record.

On January 15, 2015, Plaintiff presented, complaining of cold weather exacerbation of her lumbar disc disease causing shooting pain and tenderness (A.R. 443). Dr. Danna continued Plaintiff's medications and indicated he would request a facet block in the near future (id.). On March 9, 2015, Plaintiff was given a L5 facet injection, again with excellent results reported (A.R. 442).

On April 16, 2015, Plaintiff presented, reporting marked improvement in her symptoms with some continued lower extremity cramping (A.R. 441). Her medications were continued (id.). On May 19, 2015, Plaintiff was given an L5 facet injection and her medications were continued (A.R. 440).

On July 10, 2015, Dr. Danna continued Plaintiff's medications (A.R. 439). On July 31, 2015, Plaintiff was given a facet block injection in the L5-S1 facet for low back pain (A.R. 452). On September 4, 2015, Plaintiff was given another injection in the L5 facet, with an excellent reaction reported (A.R. 451).

On October 1, 2015, Plaintiff presented, reporting continued low back pain and muscle spasms in her calf and foot (A.R. 450). Testing to date, which included an MRI a year earlier, reportedly had shown only "mild degenerative spine disease" and Plaintiff was not a candidate for surgery (id.). Plaintiff was referred for another MRI (id.).

On November 12, 2015, Plaintiff presented for an EMG and nerve conduction study of her lower extremities, which reportedly showed

findings consistent with rare fibrillation potential and sharp wave in the L5 distribution, especially on the right side, which Dr. Danna characterized as a "mildly abnormal EMG of the lower extremities showing evidence for lumbar disc disease, with nerve compression, and radiculopathy" (A.R. 461).  On November 18, 2015, Dr. Danna reported that Plaintiff had an excellent response to medical management and was responding favorably to medications and injections of Depo-Medrol and Sensorcaine (A.R. 460).  Dr. Danna reported that Plaintiff's L5 nerve was highly inflamed and radicular with intense pain shooting into the hamstring, calf and foot, for which he gave Plaintiff an injection and ordered follow up in several months (id.).

On January 6, 2016, Plaintiff presented for medication management, and Dr. Danna continued Mobic for arthritis, Flexeril for muscle spasms, Lyrica for neuritic pain, and Norco for intense pain (A.R. 459).  Dr. Danna also requested a facet block injection for Plaintiff's next appointment (id.).  On March 10, 2016, Plaintiff presented, reporting that she had improved overall with her medication regimen (A.R. 458).  On examination, she reportedly had back spasms and sensory dysesthesia along the L5-S1 root to the sciatic nerve (id.).  Dr. Danna continued Plaintiff's medications and prescribed Ambien for sleep (id.).

On May 12, 2016, Plaintiff presented, complaining of severe low back pain with radicular sciatic injury (A.R. 457).  Dr. Danna gave Plaintiff injections and continued her medications (id.).

///

///

On May 24, 2016, Plaintiff presented, complaining of low back pain and bladder pain with some incontinence (A.R. 456). Dr. Danna assessed cervical disc disease with nerve root compression and radiculopathy, spondylosis of the lumbar spine with anterolisthesis on the L5 joint space causing spinal stenosis, severe knee arthritis, and neurological changes of bladder dysfunction (id.). Plaintiff's medications were continued, and Dr. Danna requested approval for a lumbosacral injection (id.).

On August 4, 2016, Plaintiff presented, complaining of headaches, lumbar disc disease, cervical disc disease, nerve root compression and sciatica (A.R. 455). Plaintiff reported that she had to have a walker to help relieve the tension and strain to her lower back (id.). Plaintiff reportedly was "responding fairly" to her "present medical management," but had required a sciatic nerve injection two months earlier (id.). On examination, Dr. Danna reported that Plaintiff had decreased range of motion and spasticity of the neck and shoulders with radiculopathy, severe low back pain with radiculopathy, absent reflexes at the ankle and sensory dysesthesia of the L5-S1 nerve root distribution (id.). Dr. Danna assessed lumbar disc disease with nerve root compression, bilateral sciatica, osteoarthritis of the lumbosacral and cervical spine, and tension cephalgia (id.). Dr. Danna continued Plaintiff's medications (id.). On August 30, 2016, Plaintiff received a L5 nerve root injection (A.R. 434).

On September 30, 2016, Plaintiff presented in "moderate distress" on examination, after having an injection the month before for her lumbar spondylosis and bilateral L5 peripheral nerve root (A.R. 454).

Plaintiff reportedly had severe low back pain with radiculopathy, sensory dysesthesia and weakness at the L5 level, calcific tendonitis and osteoarthritis with diminished reflexes of the knee and ankle, and peripheral neuropathy related to metabolic insufficiency (A.R. 454). Dr. Danna continued Plaintiff's medications (id.).

On November 17, 2016, Plaintiff presented, reporting improvement in her local pain and dysfunction of the lumbar spine with injections (A.R. 453). Dr. Danna gave Plaintiff a peripheral nerve block at the L5 nerve root level and continued her medications (id.).

On January 9, 2017, Plaintiff presented, reporting that her condition was worsened by cold, damp and rainy weather, and that she supposedly had severe weakness of the lower extremities when she walked any given distance (A.R. 437). On examination, Plaintiff reportedly had decreased range of motion in the cervical spine, severe low back pain with radiculopathy and absent reflexes at the ankle (id.). Dr. Danna recommended a repeat EMG study given Plaintiff's reported increasing amounts of pain and leg weakness, and continued her medications (id.).

On February 9, 2017, Plaintiff presented for an EMG study, complaining of pain worsening with cold, damp weather (A.R. 436). Plaintiff reportedly had a "mildly abnormal" EMG, which showed evidence of nerve root compression but no significant denervation (id.). Dr. Danna continued Plaintiff's medications and scheduled Plaintiff for a low back injection (id.).
///

On March 6, 2017, Plaintiff presented, requesting an L5 nerve root block, claiming that she was still "surgically impaired" in her left foot from a neuroma that was removed, leaving her with burning pain and tingling and scar tissue reaction (A.R. 435).[7] On examination, Plaintiff evidenced severe sensory loss and tenderness of the arch and plantar surface of the left foot and sensory dysesthesia along the sciatic nerve distribution, spasms and tension in the cervical spine, and decreased movement of the low back, hip and knee areas (id.). Dr. Danna diagnosed traumatic injury to the left ankle and foot and continued Plaintiff's medications (id.). On March 28, 2017, Plaintiff was given an L5 nerve root injection, with excellent results reported (A.R. 432).

On May 1, 2017, Plaintiff presented, reporting she was doing "quite well" with "conservative" treatment, but she reportedly had bladder frequency as a result of neurogenic difficulty for her low back pain and lumbar disc disease, and sharp burning pain in her left foot where she had surgery (A.R. 433). Dr. Danna continued Plaintiff's medications and recommended the use of a front-wheeled walker "for activity levels" (id.).

C.    **Subsequent Treatment with Pain Management Specialist Dr. Ajay Patel and Neurologist Dr. Munther Hijazin**

Meanwhile, Plaintiff consulted with pain management specialist Dr. Ajay Patel on April 18, 2017, complaining of constant daily low

---

[7]    There are no medical records regarding the foot surgery.

back pain radiating to the lower extremities with associated numbness and tingling since her fall in 2014, worsened by prolonged walking, standing, bending and sitting, and relieved by medications, rest and lying supine (A.R. 372).  Plaintiff reportedly had been taking Norco, Soma and Gabapentin (id.).  Plaintiff reportedly was a nonsmoker and non alcoholic drinker (A.R. 373).  On examination, Plaintiff reportedly had myofascial trigger points present in the bilateral paraspinal muscles and traps, limited range of motion in the neck and back, increased lumbar lordosis, positive straight leg raising testing and an antalgic gait (A.R. 373-74).  Dr. Patel assessed lumbosacral radiculopathy, muscle spasm, intervertebral disc displacement in the lumbosacral region, myalgia, other spondylosis of the lumbosacral region and low back pain (A.R. 374).  Dr. Patel continued Plaintiff's medications (id.).

On June 23, 2017, Plaintiff consulted with neurologist Dr. Munther Hijazin, complaining of back pain, numbness and tingling in the lower extremities, walking difficulty and balance problems (A.R. 462-64).  Plaintiff reportedly smoked every day (A.R. 463).  On examination, Plaintiff reported weakness of the left lower extremity and she appeared to ambulate with difficulty (id.).  She was assessed with back pain and lumbosacral radiculopathy, and a MRI and nerve conduction studies were ordered (id.).  There is no indication Plaintiff used a walker or any other assistive device during this

///
///
///
///

visit (A.R. 462-64).[8]

### D. **Physical Therapy Treatment Notes**

The record also contains treatment notes for a short course of physical therapy. A physical therapy note from June 8, 2017, states that Plaintiff complained of bilateral knee pain and a torn meniscus following her fall (A.R. 467). Plaintiff reported ambulating with the assistance of a "SPC" (single point cane), with severe tenderness in both knees, standing limited to five minutes, walking limited to five minutes, sitting limited to 30 minutes, an inability to squat or kneel, and "severe" limits sitting to standing (id.). Plaintiff was offered aquatic therapy and exercises to decrease her pain (A.R. 468).[9]

According to a follow-up note dated July 11, 2017, Plaintiff had attended six physical therapy sessions and had made "progress" (A.R. 469-77). Plaintiff then was ambulating without an assistive device but reportedly used a cane on and off for long distances (A.R. 469). Plaintiff reported difficulty with daily activity, mainly with standing and ambulation (A.R. 470).

---

[8]    A July, 2017 lumbar spine MRI showed L3-L4 and L4-L5 bilateral foraminal narrowing, mild acquired spinal stenosis, mild bilateral foraminal narrowing, and a two millimeter posterior disc protrusion at L5-S1 with mild left foraminal narrowing (A.R. 465-66). The record does not contain a follow up nerve conduction study.

[9]    There is also a letter from Apple Care Medical Group dated June 8, 2017, stating that Plaintiff had been authorized to receive a folding walker with wheels, as reportedly requested by Dr. Patel (A.R. 478).

**E.  Consultative Examiner and State Agency Physician Opinions**

Consultative examiner Dr. Rocely Ella Tamayo prepared an Internal Medicine Evaluation for Plaintiff dated June 24, 2015 (A.R. 363-68). Plaintiff complained of pain from the upper back down to the shoulders and lower back, hips and groin area since a fall one year before (A.R. 363).  Plaintiff reported arthritis, pain with walking, standing and sitting, and said she had undergone epidural injections three times since August of 2014, which provided transient help (id.).  Plaintiff also reported that pain medications provided only partial help (id.). Plaintiff said that she had two surgeries to remove a left wrist cyst, and had a bunion removed from the left foot in 2005, which resulted in occasional sharp pain since this surgery (A.R. 363-64).  Plaintiff also reported having restless leg syndrome for the past seven months with right leg cramping (A.R. 364).  Plaintiff reportedly could walk 20 minutes and lift 20 pounds, as well as drive, take care of her own needs, feed the dog, go to the store or to the doctor, and make handicrafts (id.).  Plaintiff was taking Methocarbamol, Gabapentin, Hydrochlorothiazide, Cycloenzaprine, Hydromorphone, Meloxicam, Montlukast, Pramipexole, Amlodipine and Hydrocodone-Acetaminophen (id.).  Plaintiff admitted drinking vodka moderately since age 17 and said she had been using medical cannabis for the last 20 years (id.).

On examination, Plaintiff reportedly had a normal gait without the need for an assistive device, and pain in her left wrist (A.R. 365-67).  Dr. Tamayo diagnosed hypertension, a history of back pain, status post ganglion cyst removal with residual pain, a history of intermittent right foot pain, obesity, a history of restless leg

syndrome and chronic nicotine abuse, alcohol use and marijuana use (A.R. 367). Dr. Tamayo opined that Plaintiff was capable of light work with frequent kneeling and squatting, and had the ability to use the left hand for fine fingering and gross manipulation frequently (id.).

A state agency physician reviewed the record in July of 2015 and opined that Plaintiff was capable of light work with some postural limitations (i.e., no more than frequent climbing of ramps and stairs, occasional climbing of ladders, ropes and scaffolds, and frequent stooping, kneeling, crouching and crawling) given her obesity (A.R. 74-75). This physician gave "less than great weight" to Dr. Tamayo's opinion as "too restrictive than the totality of evidence supports" (A.R. 72-76 (explaining that ganglion cysts almost never result in functional limitations)).

## II.  Substantial Evidence Supports the Conclusion Plaintiff Can Work.

A social security claimant bears the burden of "showing that a physical or mental impairment prevents [her] from engaging in any of [her] previous occupations." Sanchez v. Secretary, 812 F.2d 509, 511 (9th Cir. 1987); accord Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Plaintiff must prove her impairments prevented her from working for twelve continuous months. See Krumpelman v. Heckler, 767 F.2d 586, 589 (9th Cir. 1985), cert. denied, 475 U.S. 1025 (1986).

Substantial evidence supports the conclusion that Plaintiff failed to carry her burden in this case. The Administrative Record

contains relevant evidence that "a reasonable mind might accept as adequate to support [the] conclusion" that Plaintiff was not disabled during the relevant period of time.  See Richardson v. Perales, 402 U.S. 389, 401 (1971).

None of Plaintiff's treating physicians offered any opinion regarding Plaintiff's residual functional capacity.  Consultative examiner Dr. Tamayo opined that Plaintiff was capable of light work with frequent kneeling and squatting, and the ability to use the left hand for fine fingering and gross manipulation frequently (A.R. 367). Dr. Tamayo's opinion furnishes substantial evidence to support the ALJ's decision.  See Orn v. Astrue, 495 F.3d 625, 631-32 (9th Cir. 2007) (examining physician's opinion based on independent clinical findings constitutes substantial evidence to support a non-disability determination); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (same).

The non-examining state agency physician's similar opinion lends additional support to the ALJ's decision.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (where the opinions of non-examining physicians do not contradict "all other evidence in the record" an ALJ properly may rely on these opinions); Curry v. Sullivan, 925 F.2d 1127, 1130 n.2 (9th Cir. 1990) (same).

Plaintiff argues that the consultative examiner and state agency physician opinions are too dated to be considered reliable, given Plaintiff's claim that she has worsened since 2015.  See Plaintiff's Motion, pp. 5-6 (citing Stone v. Heckler, 761 F.2d 530, 532 (9th Cir.

1985) (finding that ALJ erred in failing to consider more recent
medical opinion opining that the claimant could not work in a job
requiring the use of his lower extremities); Wier ex rel. Weir v.
Heckler, 734 F.2d 955, 963-64 (3d Cir. 1984) (same, where ALJ relied
on non-examining physicians' reports that were several years old and
ALJ ignored later opinions from examining doctors); Orn v. Astrue, 495
F.3d at 632-34 (ALJ could not rely on non-examining physician's
opinion as substantial evidence to support adverse disability decision
where that opinion relied on the same objective evidence relied upon
by contrary medical opinions by treating physicians).  Plaintiff also
cites some examination findings post-dating the opinions and alleges
that she suffered a lateral meniscus tear in the left knee assertedly
necessitating an assistive device.  See Plaintiff's Motion, p. 6
(citing A.R. 382, 406, 435-36, 454-55, 478); A.R. 281-85 (attorney
letter brief to the Appeals Council).  Plaintiff argues that she has a
residual functional capacity for no more than sedentary exertion,
eroded by the need for an assistive device.  See Plaintiff's motion,
p. 8.  Plaintiff's arguments do not render insubstantial the evidence
supporting the ALJ's decision.


Unlike the cases Plaintiff cites, there is no evidence in the
present case that the ALJ ignored any recent medical opinions in favor
of the opinions of the consulting examiner and state agency physician.
Plaintiff's counsel was aware of the medical record and did not ask
the ALJ to order an updated consultative examining opinion.  See A.R.
32-65.  Plaintiff did not produce objective medical evidence
documenting sufficient deterioration in Plaintiff's medical condition
to call into question the validity of Dr. Tamayo's opinion or the

state agency physician's opinion.  To the contrary, the record
reflects that Plaintiff complained of knee pain in June of 2014
(see A.R. 354) and again in April of 2015 (see A.R. 343), prior to
both opinions at issue.

Some evidence suggests Plaintiff may have needed an assistive
device beginning some time after the opinions at issue.  Plaintiff was
first observed to be using a walker in August of 2016 (A.R. 455).  Dr.
Danna recommended the use of a walker in May of 2017 (A.R. 433).
Plaintiff reportedly was using a single point cane at a physical
therapy session in June of 2017 (but not during a session in July of
2017) (A.R. 467, 469).  Plaintiff was approved for a walker in June of
2017 (A.R. 478).  However, the ALJ considered and rejected Plaintiff's
asserted need for an assistive device, given Plaintiff's medical
history, assertedly "mild" clinical findings and "minimal"
neurological deficits (A.R. 25).  Moreover, to the extent the ALJ
erred in rejecting Plaintiff's alleged need for an assistive device,
or in failing to find that Plaintiff retained a residual functional
capacity for only sedentary work as Plaintiff now suggests, any such
error was harmless, given the vocational expert's testimony.

The vocational expert testified that Plaintiff's past relevant
work as a customer service representative (DOT 239.362-014), was
skilled, sedentary work as actually and generally performed (A.R. 58-
59).  The expert testified that a person with the residual functional
capacity the ALJ found to exist could perform Plaintiff's past
relevant work as a customer service representative as actually and
///

generally performed (A.R. 59-60).[10]  According to the vocational

expert, even if standing and walking were further limited to two hours

in an eight-hour day, a person so limited could still perform work as

a customer service representative (A.R. 60).  The vocational expert

further testified, that if the person also required an assistive

device for prolonged ambulation, such requirement would not impact the

occupation of customer service representative (id.).


The vocational expert's testimony furnishes substantial evidence

that there exist significant numbers of jobs Plaintiff can perform.

See Barker v. Secretary, 882 F.2d 1474, 1478-80 (9th Cir. 1989);

Martinez v. Heckler, 807 F.2d 771, 775 (9th Cir. 1986); see generally

Johnson v. Shalala, 60 F.3d 1428, 1435-36 (9th Cir. 1995) (ALJ

properly may rely on vocational expert to identify jobs claimant can

perform); 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520, 416.920;

see also Lewis v. Barnhart, 281 F.3d 1081, 1083 (9th Cir. 2002) (a

claimant is not disabled if she can perform her past relevant work as

she actually performed it or as such work is generally performed).


To the extent the evidence of record is conflicting, the ALJ

properly resolved the conflicts.  See Treichler v. Commissioner, 775

F.3d 1090, 1098 (9th Cir. 2014) (court "leaves it to the ALJ" to

resolve conflicts and ambiguities in the record).  The Court must

uphold the administrative decision when the evidence "is susceptible

_____

[10]    The vocational expert explained that the customer
service representative job required frequent (but not constant)
fingering (i.e., reaching and handling for six hours out of an
eight-hour day) (A.R. 61-62).

to more than one rational interpretation." <u>Andrews v. Shalala</u>, 53
F.3d at 1039-40.  The Court will uphold the ALJ's rational
interpretation of the evidence in the present case notwithstanding any
conflicts in the record.

**III.  <u>The ALJ did not Materially Err in Discounting Plaintiff's</u>**
      **<u>Subjective Complaints.</u>**

Plaintiff challenges the legal sufficiency of the ALJ's stated
reasons for discounting Plaintiff's subjective complaints. <u>See</u>
Plaintiff's Motion, pp. 8-11.  An ALJ's assessment of a claimant's
credibility is entitled to "great weight." <u>Anderson v. Sullivan</u>, 914
F.2d 1121, 1124 (9th Cir. 1990); <u>Nyman v. Heckler</u>, 779 F.2d 528, 531
(9th Cir. 1985).  Where, as here, an ALJ finds that the claimant's
medically determinable impairments reasonably could be expected to
cause some degree of the alleged symptoms of which the claimant
subjectively complains, any discounting of the claimant's complaints
must be supported by specific, cogent findings.  <u>See</u> <u>Berry v. Astrue</u>,
622 F.3d 1228, 1234 (9th Cir. 2010); <u>Lester v. Chater</u>, 81 F.3d 821,
834 (9th Cir. 1995); <u>but see</u> <u>Smolen v. Chater</u>, 80 F.3d 1273, 1282-84
(9th Cir. 1996) (indicating that ALJ must offer "specific, clear and
convincing" reasons to reject a claimant's testimony where there is no
///
///
///
///
///
///

evidence of "malingering").[11]  An ALJ's credibility finding "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony."  See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal citations and quotations omitted); see also Social Security Ruling ("SSR") 96-7p (explaining how to assess a claimant's credibility), superseded, SSR 16-3p (eff. Mar. 28, 2016).[12]  As discussed below, the ALJ stated sufficient reasons for finding Plaintiff's subjective complaints less than fully credible.

Plaintiff testified that she could not work because of her back condition, which supposedly has caused pain to radiate down her left leg since her fall in 2014 (A.R. 38-39).  Plaintiff estimated that she could walk for only a half a block and stand for only five to 10

---

[11]  In the absence of an ALJ's reliance on evidence of "malingering," most recent Ninth Circuit cases have applied the "clear and convincing" standard.  See, e.g., Leon v. Berryhill, 880 F.3d 1041, 1046 (9th Cir. 2017); Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015); Burrell v. Colvin, 775 F.3d 1133, 1136-37 (9th Cir. 2014); Treichler v. Commissioner, 775 F.3d at 1102; Ghanim v. Colvin, 763 F.3d 1154, 1163 n.9 (9th Cir. 2014); Garrison v. Colvin, 759 F.3d 995, 1014-15 & n.18 (9th Cir. 2014); see also Ballard v. Apfel, 2000 WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000) (collecting earlier cases).  In the present case, the ALJ's findings are sufficient under either standard, so the distinction between the two standards (if any) is academic.

[12]  The appropriate analysis under the superseding SSR is substantially the same as the analysis under the superseded SSR.  See R.P. v. Colvin, 2016 WL 7042259, at *9 n.7 (E.D. Cal. Dec. 5, 2016) (stating that SSR 16-3p "implemented a change in diction rather than substance") (citations omitted); see also Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (suggesting that SSR 16-3p "makes clear what our precedent already required").

minutes at a time, although she admitted that she cleaned house, cooked, drove, and took care of her boyfriend (who then was 75 years old and an amputee) (A.R. 40-42, 51-52, 55). Yet, Plaintiff also claimed that she spent most of her days seated or in bed, with regular breaks to get up and walk around and shift positions (A.R. 42). Further, Plaintiff said that her doctors had told her to elevate her legs all the time to reduce swelling (A.R. 43). Plaintiff claimed she had pain every day of at least a five on a scale of 1-10, she regularly took Gabapentin and Meloxicam, and she tried to limit her Norco because it supposedly made her sleep and inhibited her functioning (A.R. 43-44).[13]

Plaintiff had undergone two surgeries on her left hand for a ganglion cyst (A.R. 44-45). Plaintiff said she does not have the strength in her left hand that she once had and that her hand contorts and spasms (A.R. 45-46). Plaintiff admitted that she uses a computer at home, but claimed she cannot use it on a constant basis (id.). Plaintiff testified that she likes to play dominos, watch television, read, use her phone, go to church weekly, and take care of her pit bull (which she no longer walks), and that she had just resumed doing

---

[13]    In an Exertion Questionnaire dated June 8, 2015, Plaintiff reported that she had pain in her lower back which supposedly radiated down her legs, causing cramping and muscle spasms (A.R. 206). She reported that she did normal day-to-day activities such as washing dishes and driving, which she alleged caused her to have pain (id.). Plaintiff reported that she did not walk much due to pain, she could climb stairs (15 steps), and could lift less than ten pounds and a bag of groceries once a week, sweep, mop, wash dishes in 15 minute intervals, garden, and drive a car for up to 15 miles (A.R. 206-08). Plaintiff reportedly was using a knee brace for her left knee approximately one-third of the time (A.R. 208).

aquatic therapy (A.R. 53-57).

The ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effect of her symptoms not entirely consistent with the medical evidence and other evidence in the record. See A.R. 23-25 (finding no evidence establishing that Plaintiff's impairments are so severe as to prevent Plaintiff from working). The ALJ cited: (1) Plaintiff's relatively conservative treatment with pain medication and epidural injections with noted "excellent results" and improvement with no motor deficits; (2) no evidence that Plaintiff's left ganglion cysts, which had been removed with surgery, caused greater limitations than Dr. Tamayo found to exist; (3) Plaintiff's knees had been treated conservatively with physical therapy and injections, with reports of full range of motion and motor strength; and (4) Plaintiff's activities of daily living which showed she was able to perform a wide range of activities of daily living, discrediting her allegations of functional limitations (A.R. 24-26).

Regarding reason (4) above, the ALJ reasonably could determine that Plaintiff's admitted daily activities of taking care of her boyfriend, performing household chores, cooking, driving, and shopping, going to church weekly and caring for her dog suggest that Plaintiff's functional limits are not as profound as Plaintiff claims. See Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (inconsistency between claimed incapacity and admitted activities properly can impugn a claimant's credibility); Burch v. Barnhart, 400 F.3d 676, 680-812 (9th Cir. 2005) (daily activities can constitute "clear and convincing reasons" for discounting a claimant's

testimony); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)
(claimant's testimony regarding daily domestic activities undermined
the credibility of her pain-related testimony); Morgan v.
Commissioner, 169 F.3d 595, 600 (9th Cir. 1999) (evidence of
claimant's ability to "fix meals, do laundry, work in the yard and
occasionally care for his friend's child serve as evidence of [the
claimant's] ability to work").

Regarding the portions of reasons (1) through (3) above which
concern the objective medical evidence, an ALJ permissibly may rely in
part on a lack of supporting objective medical evidence in discounting
a claimant's allegations of disabling symptomology.  See Burch v.
Barnhart, 400 F.3d at 681 ("Although lack of medical evidence cannot
form the sole basis for discounting pain testimony, it is a factor the
ALJ can consider in his [or her] credibility analysis."); Rollins v.
Massanari, 261 F.3d at 857 (same); see also Carmickle v. Commissioner,
533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical
record is a sufficient basis for rejecting the claimant's subjective
testimony"); Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007), cert.
denied, 552 U.S. 1141 (2008) (subjective knee pain properly discounted
where laboratory tests showed knee function within normal limits); SSR
16-3p ("[O]bjective medical evidence is a useful indicator to help
make reasonable conclusions about the intensity and persistence of
symptoms, including the effects those symptoms may have on the ability
to perform work-related activities . . .").  Although inconsistencies
between subjective symptom complaints and objective medical evidence
cannot be the sole basis for discounting a claimant's complaints,
Burch v. Barnhart, 400 F.3d at 681, the ALJ did not discount

Plaintiff's complaints solely on the basis that the complaints were inconsistent with the objective medical evidence.

The ALJ's citing of Plaintiff's assertively "conservative" treatment in portions of reasons (1) and (3) above is perhaps less persuasive. A limited course of treatment sometimes can justify the rejection of a claimant's testimony, at least where the testimony concerns physical problems. See, e.g., Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999). In the present case, however, it is highly doubtful Plaintiff's treatment with narcotic pain medications, epidural injections and hand surgery accurately may be characterized as "conservative" within the meaning of Ninth Circuit jurisprudence (even though Plaintiff's doctors sometimes used the term "conservative" to reference Plaintiff's treatment, see A.R. 433, 445). See, e.g., Childress v. Colvin, 2014 WL 4629593, at *12 (N.D. Cal. Sept. 16, 2014) ("[i]t is not obvious whether the consistent use of [Norco] (for several years) is 'conservative' or in conflict with Plaintiff's pain testimony"); Aguilar v. Colvin, 2014 WL 3557308, at *8 (C.D. Cal. July 18, 2014) ("It would be difficult to fault Plaintiff for overly conservative treatment when he has been prescribed strong narcotic pain medications"); Christie v. Astrue, 2011 WL 4368189, at *4 (C.D. Cal. Sept. 16, 2011) (refusing to characterize as "conservative" treatment including use of narcotic pain medication and epidural injections).

The arguable invalidity of the ALJ's characterization of Plaintiff's treatment as "conservative" does not undermine the ALJ's

conclusion that Plaintiff's subjective statements and testimony were less than fully credible. Where one or more of an ALJ's stated reasons for discounting a claimant's credibility may have been invalid, a court nevertheless will uphold the ALJ's credibility determination where, as here, sufficient valid reasons remain. See Carmickle v. Commissioner, 533 F.3d at 1162-63. In the present case, the ALJ stated sufficient valid reasons to allow this Court to conclude that the ALJ discounted Plaintiff's credibility on permissible grounds. See Moisa v. Barnhart, 367 F.3d at 885. The Court therefore defers to the ALJ's credibility determination. See Lasich v. Astrue, 252 Fed. App'x 823, 825 (9th Cir. 2007) (court will defer to Administration's credibility determination when the proper process is used and proper reasons for the decision are provided); accord Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1464 (9th Cir. 1995).[14]

///
///
///
///
///
///
///
///

---

[14] The Court need not and does not determine whether Plaintiff's subjective complaints are credible. Some evidence suggests that those complaints may be credible. However, it is for the Administration, and not this Court, to evaluate the credibility of witnesses. See Magallanes v. Bowen, 881 F.2d 747, 750, 755-56 (9th Cir. 1989).

**CONCLUSION**

For all of the foregoing reasons,[15] Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: May 3, 2019.

_____/s/_____
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[15] The Court has considered and rejected each of Plaintiff's arguments. Neither Plaintiff's arguments nor the circumstances of this case show any "substantial likelihood of prejudice" resulting from any error allegedly committed by the Administration. See generally McLeod v. Astrue, 640 F.3d 881, 887-88 (9th Cir. 2011) (discussing the standards applicable to evaluating prejudice).